IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOGAN FARMS, INC., *et al.*, | } | |
| *Plaintiff(s)* | } | |
| | } | |
| v. | } | CIVIL ACTION NO. H-05-0766 |
| | } | |
| SMITHFIELD FOODS, INC., | } | |
| *Defendant(s)* | } | |

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION FOR RECONSIDERATION**

Pending before the Court is Defendant Smithfield Foods, Inc.'s ("Smithfield") motion for reconsideration of this Court's June 9th order granting Plaintiffs' motion for expedited discovery related to the issue of personal jurisdiction (Doc. 21). For the following reasons, the Court **ORDERS** that the motion is **DENIED**. Limited discovery on the issue of personal jurisdiction shall proceed as set forth in this Court's June 9th order.

**I.    BACKGROUND AND RELEVANT FACTS**

Plaintiffs Logan Farms, Inc. and James P. Logan, Jr. (collectively, "Logan") filed this patent infringement action against Smithfield in March 2005. Plaintiffs' patent relates to boneless, spirally-sliced meat products. Plaintiffs allege that Smithfield, the nation's largest hog producer and pork packer, infringed their patent by manufacturing and selling boneless, spirally sliced meat products, either directly or through its subsidiaries. On 03 May 2005 Smithfield filed a motion to dismiss for lack of personal jurisdiction, contending, *inter alia*, that Plaintiffs could not make out a *prima facie* showing of personal jurisdiction because at all relevant times it (1) was not incorporated or registered to do business in Texas; (2) did not own or lease property in Texas; (3) did not have a single employee working in Texas; (4) did not sell products to customers in Texas; and (5) did not

manufacture or process a single product in Texas.[1]  In their response, Plaintiffs asserted that (1) Smithfield had numerous contacts with Texas, including retail outlets, online stores, and mail-order catalogs; and (2) even if Smithfield itself did not make or sell infringing products in Texas, it "intentionally established a distribution channel through its subsidiaries, divisions and [/] or retail outlets, and but for its approval, the subsidiaries would not have sold the infringing meat products in Texas."[2]  Concurrent with their response to Smithfield's motion to dismiss, Plaintiffs filed a motion for expedited discovery on the issue of personal jurisdiction.  That motion specifically stated that "[i]n order for Plaintiffs to adequately respond to Defendant's Motion to Dismiss, Plaintiffs require discovery related to [the] corporate structure of Smithfield."[3]  Having had reviewed both Smithfield's motion to dismiss and Plaintiffs' response, it was clear to this Court that discovery on the personal jurisdiction issue was appropriate, and accordingly on June 9th the Court granted the motion for expedited discovery, in spite of the fact that Smithfield had not yet filed a response. Later that same day, Smithfield filed a reply to Plaintiffs' response, contending that all of the Texas contacts identified by Plaintiffs were attributable only to Smithfield's subsidiaries, and not to Smithfield itself.  Smithfield's reply also argued that Plaintiffs' request for discovery should be denied because Plaintiffs "ha[d] not seriously challenged" the facts put forward in the declarations of Smithfield's corporate officers relating to the operations of its subsidiaries.  In the present motion for reconsideration, Smithfield (1) contends that it should have been given an opportunity to respond to the motion for expedited discovery; and (2) asks the Court to deny Plaintiffs' requested discovery. Because no court-ordered discovery has yet taken place, and the Court has now considered Smithfield's arguments, Smithfield's contention that it should have been given an opportunity to respond is moot.  Accordingly, the Court now considers only whether Plaintiffs should be allowed expedited discovery on the personal jurisdiction issue.

---

[1] Doc. 5 at 1.

[2] Doc. 9 at 6.

[3] Doc. 8 at 1.

**II.   ANALYSIS**

Because "the mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent," *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1363 (5th Cir.1990)**, this Court cannot exercise personal jurisdiction over Smithfield simply because its subsidiaries may be subject to personal jurisdiction in Texas. Although this is the general rule, there may be times when a parent corporation so dominates its subsidiary that the two cannot be considered separate and distinct entities.** *Dalton,* **897 F.2d at 1363;** *Hargrave v. Fireboard Corp.,* **710 F.2d 1154, 1159 (5th Cir.1983);** *Walker v. Newgent,* **583 F.2d 163, 167 (5th Cir.1978). Where the parent corporation is merely the "alter ego" of its subsidiary, a court can impute to the parent its subsidiary's contacts with the forum state for the purposes of establishing personal jurisdiction.** *Dalton,* **897 F.2d at 1363;** *Hargrave,* **710 F.2d at 1159;** *Walker,* **583 F.2d at 167. "An alter ego relationship between a parent corporation and its subsidiary is based on control."** *DP Solutions, Inc. v. Rollins, Inc.*, **34 Fed.Appx., 2002 WL 494672 (5th Cir.). Generally, there must be "proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes."** *Hargrave,* **710 F.2d at 1160. Although the assessment should be based on the totality of the circumstances,** *Alpine View Co. Ltd. v. Atlas Copco AB,* **205 F.3d 208, 218 (5th Cir.2000);** *Grundle Lining Constr. Corp. v. Adams County Asphalt,* **85 F.3d 201, 209 (5th Cir.1996), the Fifth Circuit has considered the following factors to be relevant in determining whether a parent's control will allow alter ego jurisdiction:**

> **(1) Whether the parent owns 100% of the subsidiary's stock.**
> **(2) Whether the two corporations maintain separate headquarters.**
> **(3) Whether the parent and subsidiary share common officers and directors.**
> **(4) Whether corporate formalities are observed.**
> **(5) Whether separate accounting systems are maintained.**
> **(6) Whether the parent exercises complete authority over general policy.**
> **(7) Whether the subsidiary exercises complete authority over daily operations, including research and development, marketing, and supply.**

*Dalton,* 897 F.2d at 1363 (citing *Hargrave,* 710 F.2d at 1160)). Of course, "[i]t should be noted that the alter ego test for attribution of contacts, *i.e.,* personal jurisdiction, is less stringent than that for liability." *Stuart v. Spademan,* 772 F.2d 1185, 1198 n. 12 (5th Cir.1985); *Reul v. Sahara Hotel,* 372 F.Supp. 995, 997 (S.D.Tex.1974).

Having reviewed the record in this case, the Court remains convinced that Plaintiffs should be entitled to conduct discovery related to the issue of personal jurisdiction over Smithfield in Texas. The Court agrees with Plaintiffs that in order for them to be able to adequately respond to Smithfield's motion to dismiss, they must be allowed to conduct discovery related to Smithfield's corporate structure. Much of the information relevant to the factors set out in *Hargrave* and its progeny is non-public and very fact-intensive (*e.g.*, whether corporate formalities are observed; whether separate accounting systems are maintained; whether the parent exercises complete authority over general policy), and thus limited discovery is frequently appropriate. The Court specifically rejects Smithfield's contention that "[b]ecause Logan has not seriously challenged" its recitation of facts, "there is no basis for jurisdictional discovery."[4] On the contrary, Plaintiffs cannot be expected to seriously challenge Smithfield's factual assertions without the benefit of discovery. In sum, the motion for reconsideration is denied, and discovery shall proceed as set forth in this Court's order of June 9th (Doc. 13).

SO ORDERED at Houston, Texas, this 23rd day of June, 2005.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[4] Doc. 16 at 9.