IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JAMES P LOGAN, JR., } | |
| } | |
|     *Plaintiff*, } | |
| v. } | Civil Action No. H-05-766 |
| } | |
| SMITHFIELD FOODS, INC., *et al*, } | |
| } | |
|     *Defendants*. } | |

## MEMORANDUM ON CLAIM CONSTRUCTION

This patent case is before the Court for construction of the disputed claim term in United States Patent No. 35,374 (the '374 Patent). The Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996), (the *Markman* Hearing) on September 4, 2008. Upon review and consideration of the evidence before the Court, the arguments presented by counsel at the *Markman* Hearing, and the controlling legal authority, the Court issues this Memorandum on Claim Construction.

I.    Background Information

Plaintiffs James P. Logan, Jr. (Logan) and Logan Farm's, Inc. initiated this suit against Defendants Smithfield Foods, Inc.; Farmland Foods, Inc.; Gwaltney of Smithfield Ltd.; John Morrell & Co.; The Smithfield Companies, Inc.; and The Smithfield Packing Co., Inc. (collectively, the "Defendants")[1] for infringement of the '374 Patent.[2] The '374 patent is for "[a] boneless meat product *and method for making such product*, including hams and other boneless meat, the meat being spirally sliced around an axis through the meat." (Doc. 71 Ex. 1 at B1).

---

[1] The Court dismissed Logan Farm's, Inc. from this action on August 31, 2005 (Doc. 42). The Court subsequently dismissed Smithfield Foods, Inc. on March 9, 2006, (Doc. 58). Most recently, the Court dismissed Farmland Foods, Inc. and John Morrell & Co. on January 23, 2009 (Doc. 127).

[2] Logan only alleges infringement of claim 1 of the '374 Patent. (Doc. 72 at 1).

Claim 1 of the '374 Patent states:

A boneless sliced (1) <u>meat</u> having its meat arranged in the form of a continuous spiral cut about an axis of the meat, the axis being created by the temporary insertion of a (2) <u>support member</u> (3) <u>in the meat</u>, wherein the depth of said cut is limited to leave an (4) <u>uncut core of</u> (5) <u>meat</u>, (6) <u>said core being of sufficient cross-section</u> to cause the boneless sliced meat to retain its shape when the support member is removed.

The Court has numbered and underlined the terms the parties initially proposed for construction.

Prior to the *Markman* Hearing, the parties narrowed these six terms to two disputed and two agreed terms. The parties agreed to have the terms "support member" and "in the meat" construed as one term, "support member in the meat." While they agreed on the construction of "support member in the meat" and "uncut core of meat" by the time they filed their Joint Claim Construction and Prehearing Statement (Doc. 109) on September 2, 2008, they still disagreed on the term "said core being of sufficient cross-section." It was not until the *Markman* Hearing that the parties agreed that this term should be construed by its plain language and that it does not include any size limitation. Although the parties agree that "meat" should have only one potential construction, as opposed to the two proposed earlier in the litigation, they cannot agree on its construction.

To summarize, the parties have agreed on the following:

| Claim Term | Agreed Construction |
|---|---|
| "support member in the meat" | "a spit that extends into the meat a sufficient distance to support the meat (that is, help the meat maintain its shape or integrity) during spiral slicing. The spit is located at the axis around which the meat rotates, and does not necessarily extend through the meat or traverse the entire length of the spiral cut." |
| "uncut core of meat" | "the inner, central portion of the meat that has neither been spirally sliced nor displaced by insertion of a spit." |
| "said core being of sufficient cross-section" | This term should be construed by its plain language and does not include any size limitation. |

The parties dispute the construction of the term "meat" and propose as follows:

| **Claim Term** | **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
|---|---|---|
| "meat" | "meat" | "a single joint of boneless meat, not pressed meat." |

Accordingly, there is only one claim term, "meat," remaining for the Court to construe.

II.        Legal Standard on Claim Construction

Under *Markman v. Westview Instruments*, it falls to a district court to construe the scope and meaning of the patent claims.  517 U.S. 370, 390 (1996).  "It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Markman*, 52 F.3d at 979).  The words of a claim "are generally given their ordinary and customary meaning."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics*, 90 F.3d at 1582).  The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Id.* at 1313.  This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id.*

For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Id.* at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)).  For other claim terms, however, the meaning of the claim language may be less

apparent. To construe those terms, the court considers "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean . . . [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (citing *InnovalPure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

The court may also consider "extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980). Although extrinsic evidence may assist the court in claim construction, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (internal quotations and citation omitted). As such, extrinsic evidence should be "considered in the context of the intrinsic evidence." *Id.* at 1319.

It is also recognized that a patentee is free to be his own lexicographer. *Markman*, 52 F.3d at 979. The caveat is that any special definition given to a word must be clearly defined in the specification. *Id.* (citing *Intelicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992)). Generally, when the specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess, then the inventor's lexicography governs. *Phillips*, 415 F.3d at 1316 (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).

III.      Construction of Claim Terms

The parties agree on the proper construction of three terms in Claim 1 of the '374 Patent. Accordingly, the Court adopts the parties' agreed constructions as set forth in Section I

of this Memorandum.  The Court has reviewed and considered the evidence before it, the arguments presented by counsel at the *Markman* Hearing, and the controlling legal authority with respect to the remaining claim term in dispute, "meat."  For the reasons set forth below, the Court construes the claim term "meat" as "a single joint of boneless meat, not pressed meat."

The Court agrees with the defendant's contention that the doctrine of prosecution disclaimer applies in this case.  "Arguments and amendments made during the prosecution of a patent application and other aspects of the prosecution history, as well as the specification and other claims, must be examined to determine the meaning of terms in the claims."  *Southwall Techs., Inc. v. Cardinal ID Co.*, 54 F.3d 1570, 1576 (Fed. Cir.), *cert. denied*, 116 S.Ct. 515 (1995) (citing *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1438 (Fed. Cir.), *cert. denied*, 109 S.Ct. 542 (1988)).  "The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."  *Id.* at 1576 (citing *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988); *Senmed, Inc. v. Richard-Allan Med. Indus., Inc.*, 888 F.2d 815, 818 (Fed. Cir. 1989)).  "Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."  *Id.* (citing *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562 (Fed. Cir. 1991)).  This doctrine "promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution."  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) (*citing Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998)).

Courts will not apply the doctrine of prosecution disclaimer where the alleged disavowal of claim scope is ambiguous.  *Id.* at 1324.  "Prosecution disclaimer does not apply, for example, if the applicant simply describes features of the prior art and does not distinguish the

claimed invention based on those features." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1375 (Fed. Cir. 2008) (citing *Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1337 (Fed. Cir. 2005)).  If, however, "the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega*, 334 F.3d at 1324.  "A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art." *Computer Docking Station*, 519 F.3d at 1374. The patentee's statements must be both "clear and unmistakable." *Omega*, 334 F.3d at 1326.

The USPTO issued an Office Action on August 25, 1989, (the Office Action) rejecting Logan's patent application.  Specifically, it rejected Claims 3-6 pursuant to 35 U.S.C. § 103 as being "unpatentable over Hoenselaar, Mart or Chesley in view of Doepken or Ferrarini." (Def.'s *Markman* Binder, Tab 4 at 2).  The USPTO went on to state, "[i]t would be obvious to remove all bones from the spiral cut ham in any of the primary references since it is old to prepare a sliced ham from which the bones have been removed, as evidenced by either secondary reference.  The 'support member' recited in the claims is not part of the final product." (*Id.*).

In his response, Logan makes various statements relevant to the issue of whether the doctrine of prosecution disclaimer should apply.  Of specific importance is the following:

> The present invention is directed toward <u>a single joint of meat, not a pressed meat product</u>.  The present invention's commercial appeal is due substantially to the presentation of the meat as a single meat product having continuous spiral slices arranged around a longitudinal axis of unsliced meat in the absence of a bone . . . [t]he use of pressed ham meat would not enjoy similar success as pressed ham is perceived as having a much lesser commercial appeal . . . [a]pplicant respectfully submits that the Ferrarini reference is directed toward an entirely different product and does not teach the present invention: <u>a single boneless meat product having a continuous spiral slice therethrough</u>.

(Def.'s *Markman* Binder, Tab 5 at 6). Also in regard to the Ferrarini reference, Logan states that an attempt to spirally slice a ham following Ferrarini would cause the ham to disintegrate because of its pressed nature and lack of support. (*Id.* at 7). Logan further states that "the use of pressed meat in a boneless meat product significantly decreases [the product's] commercial appeal and value[.]" (*Id.*).

The USPTO reviewed Logan's response and decided once more to reject claims 3-6 pursuant to 35 U.S.C. § 103. The USPTO found these claims "unpatentable over Hoenselaar, Mart, or Chesley in view of Doepkin." (Def.'s *Markman* Binder, Tab 6 at 3). Although the USPTO said that Logan's arguments in response to the Office Action were unpersuasive, the USPTO did not reject the claims in view of Ferrarini as it had in August of 1989 when the Office Action was first issued.

The Court, therefore, finds that Logan clearly and unmistakably disavowed a certain meaning in an attempt to obtain his patent. Logan clearly characterized the product and process set forth in his patent application to overcome the USPTO's rejection of claims 3-6 in view of Ferrarini. He identifies his invention as "a single joint of meat, not a pressed meat product" in order to distinguish it from the product described in Ferrarini. He bolsters this with statements about Ferrarini's lack of structural support and lower commercial appeal and value. Although the USPTO chose not to change its decision to reject claims 3-6, it did accept Logan's arguments about Ferrarini and, as such, did not issue its rejection in view of Ferrarini as it had previously. The Court's decision to apply the doctrine of prosecution disclaimer in this case protects the public's reliance on Logan's clear and unmistakable statements.

Because the Court has determined that Logan's remarks constitute a clear and unmistakable disclaimer of the claim scope, the Court must now decide exactly what Logan

disclaimed during the prosecution history. Specifically, the Court must define "a single joint of meat, not pressed meat." The Court will give this term its ordinary and customary meaning, which is the meaning it would have had to a person of ordinary skill in the art in question at the time of the invention. The Court has not only considered the intrinsic evidence, such as the '374 Patent, it has also reviewed patents for other inventions, expert and inventor declarations, and the Oxford English Dictionary.

The Court will define "single joint of boneless meat" as "one of the portions into which an animal carcass is divided." United States Patent No. 4,545,177 (the '177 Patent), which was issued on October 8, 1985, includes the following language in its Description of the Preferred Embodiments section, "part of the carcass of an animal e.g. a joint of meat." (Pl.'s *Markman* Binder at 48). The Oxford English Dictionary Online defines "joint" as "one of the portions into which a carcass is divided by the butcher, consisting of one or more bones (e.g. that of the leg or shoulder) with the meat thereon; *esp.* as cooked and served at table." Oxford English Dictionary Online, http://www.oed.com/ (definition from the 2d ed. 1989) (last visited Sept. 4, 2008). While the plaintiff and defendants agree that a joint of meat includes both boned and boneless products, the defendant wishes to define "a single joint of boneless meat" as "a product produced from the whole or intact muscles of a single cut from a single animal, rather than from multiple chunks from the same or different animals" based on the expert declaration of Dr. Edward William Mills (Dr. Mills). The plaintiff, however, contends that the defendant's definition would exclude from it various boneless products because "all boneless meats, by virtue of their description . . . are manufactured either by removing muscle tissue . . . from the bone or vice versa . . . and then reforming the muscles with pressure . . . into a single, solid piece

of meat marketed as a boneless product." (Doc. 95 at 3). For example, as Logan sets forth in his declaration,

> A boneless turkey breast product (or any other fowl) is generally made by the removal of the uncooked breast meat (a breast includes a left and right lobe of breast-meat) of one or more whole turkeys. Multiple lobes of turkey breast meat are then either netted/bound or placed in a mold with or without a binder and then cooked. The lobes of breast-meat are thus held together to form a unitary piece of boneless meat that is generally marketed as a 3-4 pound boneless, turkey breast which generally consisting of 2-3 lobes of breast-meat. This type of product was shown and described during the prosecution of the '374 Patent.

(Logan Decl., Doc. 95 Ex A at ¶ 9). Viewing the extrinsic evidence in the context of the intrinsic evidence, the Court defines a "single joint of boneless meat" as "one of the portions into which an animal carcass is divided."

The Court defines "pressed meat" as "meat products that are formed from multiple joints of meat, that is, from pieces of meat that are separated from the bone and from one another into numerous small pieces, then reformed into a single conjoined meat product." Logan uses the clause "not pressed meat" in his response to the Office Action to distinguish it from the term "a single joint of meat." Additionally, he describes a "pressed meat" product as having a lack of structural support, as well as a lower commercial appeal and value, than "a single joint of boneless meat." Logan proposes that the Court define "pressed meat" in accordance with 9 C.F.R. § 319.105 which provides the following definition for pressed ham: "[f]inely divided (chopped, ground, flaked, chipped) cured ham products such as 'ham patties,' 'chopped ham,' 'pressed ham,' and 'spiced ham.'" 9 C.F.R. § 319.105(a). This regulation further provides the minimum meat Protein Fat Free (PFF) percentage requirements for various types of cured pork products. On the other hand, the defendant, based upon the declaration of Dr. Mills, contends that "pressed meat" should be defined as "meat products that are separated

- 9 -

from the bone and from one another into numerous small pieces, then reformed into a single conjoined meat product." Dr. Mills asserts that a person having ordinary skill in the art of the '374 Patent would not need to refer to a government regulation to obtain an understanding of the term "meat." Additionally, the Court notes that Logan's response to the Office Action refers to pressed meat in the context of Ferrarini, a French patent. It, therefore, seems misplaced for the Court to rely on a federal regulation to define "pressed meat" in this context. Viewing the extrinsic evidence in the context of the intrinsic evidence, the Court defines "pressed meat" as "meat products that are formed from multiple joints of meat, that is, from pieces of meat that are separated from the bone and from one another into numerous small pieces, then reformed into a single conjoined meat product."

IV.     Conclusion

The Court, therefore, accepts the parties' agreed constructions of the following terms in Claim 1 of the '374 Patent: "support member in the meat," "uncut core of meat," and "said core being of sufficient cross-section." The Court construes the remaining disputed claim term, "meat," as set forth in Section III of this Memorandum.

SIGNED at Houston, Texas, this 31st day of March, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE